### THE EURYADES. THE ARIOSA. THE 20-D.

(District Court, S. D. New York. December 20, 1922.)

Collision ⊚⇒75—Steamship held at fault for collision with tow, notwithstanding improper lights on the latter.

> Even though a tug and tow were unquestionably at fault for failing to have proper lights on the tow, a steamship which collided with the tow *held* at fault for not realizing that the lights which were carried were those of a tow, after being apprised by the lights on the tug of the existence of a tow.

In Admiralty. Cross-libels by the Henry A. DuBois Sons Company against the Euryades, and by the Ocean Steamship Company, Limited, against the steamship Ariosa and the scow 20–D. Decree rendered charging each vessel with one-third of the damages.

Samuel Park, of New York City, for DuBois Sons Company.

Erskine Hewitt, of New York City, for Ocean Steamship Company, Limited.

LEARNED HAND, District Judge. The question here is merely whether all the blame was on the tug and tow, or whether it is shared between them and the steamer. It is conceded that even in that second case both damages must be divided in thirds, because the tug and the tow from any aspect were at fault. They did not carry the regulation lights, and I have not the least question in the world that the fact that they did not carry those lights was the controlling factor of the collision.

Now, first, as to what is not important. I do not think it makes any difference whether the Euryades changed her course to starboard or whether she did not. The testimony of the Ariosa is uncontradicted, and it would be perhaps a strange thing for a judge to say of an entirely decent and honest-appearing man that the court would not accept his statement. He may have been misled, of course, but in this case there is no great improbability against his story. The Euryades says that she thought the two lights were a destroyer. It is quite plain that she expected a destroyer at about that neighborhood, and that she should have thought these lights some curious device of destroyers is not improbable. If so, as these lights continued to approach on her port bow, what more natural than that she should have eased off to starboard to receive her?

---

But I do not really think that makes any difference, anyway. The point that I rely on in establishing her fault is that she was advised, it seems to me, beyond any peradventure, that there was a tow tailing off behind the Ariosa. Mr. Hewitt answers that by saying that, if there had been a tow, this was an English master, and he had every right to expect that the tow would show sailing lights. I quite agree. He had that right. The tow was badly made up, and the tow is at fault. She has to bear two-thirds of her damages. But put yourself in the position of the chief officer on the bridge. He sees the lights of the Ariosa, under the international rules telling him what? They tell him that here is a vessel that has two barges in tow, and he looks for the sailing lights, and does not see them. That is very perplexing. He sees off on his port bow two white lights, which, as I have said before, have no propriety under the international rules at all; he does not know what to make of those, but they are coming toward him in this mysterious way, which ought not to be. There is nothing in the international rules which indicates such lights, and he says:

"Oh, that is an American destroyer; they have a habit of showing white lights."

He had no right to say that, if you like; but the point I want to press is that he ought to have expected some lights on that tow. Now, as he did not see them, the only reasonable conclusion that he should have made was that the tow was not showing lights, or else that they had got lights which were not regular. It seems to me that, as he was advised that this vessel did have a tail, he should have looked for the tail, and, if he did not see it he should have acted on the assumption that somewhere in the neighborhood he was likely to find it. Well, he may say:

"I was so far off that I should not have thought the tow would extend so far. These lights that I thought was the destroyer were 600 yards away, and I did not anticipate that a tug would have so long a hawser as that."

There are two answers, I think, to that. The first is: He was not 600 yards away. I think no one can dispute that the testimony of the tug as to the length of the hawser must be accepted; it was 200 fathoms but that is not 600 yards. Two hundred fathoms, at least in these waters, is not an extravagant length of hawser. And then, whatever the length, I hardly think that he was justified, advised of a tow as he was, in going so close that he might run foul of it. He did run foul of it, and I think he must be charged with failure under those circumstances to keep out of those waters where he must have realized that it might have been. And so I shall have to divide these damages into thirds. You both agreed that that is the proper rule, if the steamer is held at fault. There will be no costs.